STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellant,

v.

Douglas C. BARTON, Defendant–Appellee.

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellee,

v.

Douglas C. BARTON, Defendant–Appellant.

Nos. 89–2324 and 89–2330.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1990.

Decided March 5, 1990.

Jeter E. Rhodes, Jr., argued, G.D. Morgan, on brief, Whaley, McCutchen, Blanton & Rhodes, Columbia, S.C., for appellant.

James Marcus Whitlark, argued, David A. Fedor, David E. Massey, on brief, Fedor & Massey, Columbia, S.C., for appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and HALL, Circuit Judges.

POWELL, Associate Justice:

The question presented is whether the district court erred in denying appellant's JNOV and new trial motions. We hold that the district court properly denied these motions, except to the extent that it upheld the jury's verdict awarding consequential damages. We also hold that the district court properly awarded an offset of $43,-879.71 against the judgment.

## I

Appellee Douglas C. Barton had a homeowners insurance policy with appellant State Farm Fire and Casualty Company ("State Farm"). On November 19, 1986, a fire at appellee's house caused damage in excess of the policy coverage of $80,300.00. After investigating the fire, State Farm concluded that Barton, or someone he hired, set the fire. It paid the $43,879.71 due under two mortgages on the home, and then filed this suit seeking a declaratory judgment as to its obligations under the homeowners policy. Appellee denied setting the fire or hiring anyone to set the fire, and counterclaimed for breach of contract and bad faith refusal to pay proceeds due under an insurance contract.

An eight-day trial was held in April 1988. Both parties agreed that the fire had been intentional, but they disagreed as to who set the fire. State Farm presented circumstantial evidence to support its contention that Barton or someone he hired set the fire. Barton presented circumstantial evidence to support his contention that intruders, who vandalized and robbed the house, set the fire to hide any evidence of their conduct. He supported his bad faith refusal to pay claim by presenting evidence of State Farm's behavior in investigating his claim and filing this declaratory judgment action.

The jury found for Barton, awarding $200,000.00 in actual damages and $35,-000.00 in punitive damages. The district

court denied appellant's JNOV and new trial motions, but granted its motion for an offset of $43,879.71. State Farm appeals the district court's rejection of its JNOV and new trial motions. Barton cross-appeals the district court's ruling on the offset.

## II

State Farm did not appeal the jury's verdict on the breach of contract claim. Thus, it challenges only the district court's refusal to grant a JNOV or new trial on the jury's award of $35,000.00 in punitive damages, and the court's refusal to grant a JNOV or new trial on the jury's award of $119,700.00 in consequential damages. The asserted grounds for a new trial all involve evidentiary and trial management issues. The district court acted well within its discretion in each instance, and we find no basis for a new trial.

### A

■ Appellant contends that the awards of punitive and consequential damages must be reversed because appellee failed to prove that State Farm acted in bad faith. In South Carolina, an insurer cannot be liable for bad faith refusal to pay proceeds due under an insurance agreement if there exists an objectively reasonable basis for denying the insured's claim. *See Varnadore v. Nationwide Mutual Ins. Co.*, 289 S.C. 155, 345 S.E.2d 711, 713–14 (1986). Whether such an objectively reasonable basis for denial exists depends on the circumstances existing at the time of the denial. *Id.* Therefore, when conflicting evidence has been presented, a directed verdict is generally inappropriate, and the issue of bad faith should be decided by the jury. *See Nichols v. State Farm Mutual Automobile Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616, 619 (1983).

■ The district court erred in denying appellant's JNOV motion on the issue of bad faith only if, viewing the evidence in the light most favorable to appellee, no reasonable finder of fact could have found for appellee on his bad faith claim. *See Foster v. Tandy Corp.*, 828 F.2d 1052, 1055 (4th Cir.1987). The jury's award of punitive damages must be affirmed as long as a reasonable finder of fact, viewing the evidence in the light most favorable to appellee, could have concluded that State Farm acted in willful or reckless disregard of Barton's rights under the insurance contract. *See Nichols, supra*, 306 S.E.2d at 619. Appellant presents a great deal of evidence to support its contention that it acted in good faith. Under the standard of review for the denial of a JNOV motion, most of this evidence is irrelevant. Viewing the evidence as we must, a reasonable jury could have found that State Farm had no objectively reasonable basis for denying appellee's claim and that it acted in willful or reckless disregard of appellee's rights.

The jury could have inferred from the evidence presented on behalf of appellee that State Farm deliberately set out to deny Barton's claim and that its investigation was designed to support its denial, rather than to determine the truth about the origins of the fire.[1] Evidence was presented to support appellee's claim that State Farm should have concluded that intruders had set the fire. One fireman on the scene the night of the blaze described the house as appearing "ransacked." Joint Appendix ("J.A.") at 406. Defecation was found on top of the toilet. *See id.* at 41. Clear, broken glass was found inside the back door, indicating that the door window had been broken before the fire was set. *See id.* at 118, 136. If the glass had been broken after the fire had started, the glass would have been smoked rather than clear. Valuable items, such as a stereo, microwave oven, and television, were missing from the house. *See id.* at 506. Certain sentimental items—the kind Barton might have removed had he arranged the fire—

---

1. We express no independent view regarding the relative weight of appellant's and appellee's evidence other than to note that a reasonable finder of fact also could have concluded that State Farm did not act in bad faith. The jury's verdict, however, must be the starting point of our inquiry, and we decline to disturb the judgment of the men and women who, over a period of eight days, heard and evaluated the testimony of the many witnesses.

were destroyed in the blaze. *See id.* at 23, 506. No timing device that could have triggered the fire was found. An expert in the fields of fire investigations and breaking and entering testified that it was his opinion, based on the evidence, that there had been a forced entry into the house prior to the fire. *See id.* at 99, 119.

Again viewing the facts in the light most favorable to appellee, the jury could have found that State Farm intentionally ignored this significant evidence that the fire was set by intruders or vandals, and used its resources to pin the arson on Barton. Evidence was presented that State Farm misrepresented Barton's financial situation, claiming that he arranged the arson to remedy the deteriorating state of his financial affairs when in fact State Farm *knew* that Barton had never missed a payment on any bill, had the highest available credit rating, and was current in his mortgage payments. *See id.* at 219–221 (testimony of State Farm employee Thomas Marshall). Barton testified that he told individuals from State Farm that his wife was employed at the time of the fire, but State Farm's internal investigative reports used to deny Barton's claim stated that she was unemployed. *See id.* at 157, 171, 304.

State Farm agents also failed to follow up on several leads that might have supported Barton's contention that intruders had set the fire. For example, one of the Bartons' neighbors told Thomas Marshall, a State Farm employee investigating the fire, that another neighbor, Sally Bouknight, had observed two strangers approaching the Bartons' house the day of the fire. *See id.* at 527. But no State Farm representative ever asked Bouknight what she had seen. State Farm also failed to follow up on other leads. *See id.* at 259, 572.

Granted, an insurance company need not follow up on every possible lead or piece of evidence in a claim investigation to avoid liability for bad faith refusal to pay pro-

ceeds due under an insurance policy. But when viewed in the light most favorable to appellee, the evidence permits an inference that State Farm decided to deny the claim from the time it appeared that the fire was intentional, and then set out to use its investigation to support that denial. The fire occurred in November 1986. Approximately one month later, State Farm agent Marshall wrote a report of a conversation with the Bartons. He stated, "I believe the insureds would make favorable witnesses on their behalf." *Id.* at 229. In January 1987, another State Farm employee observed the Bartons' depositions and indicated in a report that he thought they would "make very good witnesses in their own behalf." *Id.* at 345–346.

Furthermore, evidence was presented that early in 1987 State Farm agents recommended filing a declaratory judgment, not to determine the rights and obligations of the parties under the insurance contract, but to gain "some tactical advantages." *Id.* at 346. State Farm agent Marshall also testified that State Farm had a financial incentive to deny appellee's claim. If State Farm denied the claim, took assignment of the mortgages on the property, and foreclosed, it would earn a profit on the transaction of over $35,000.00. *Id.* at 251–253. Sufficient evidence was presented for the jury to find that appellant decided to deny appellee's claim so as to earn a profit at the insured's expense, used its investigation to support that denial, and then filed a declaratory judgment action to gain "tactical advantages." Viewing the evidence in the light most favorable to appellee, the jury could have found that appellant acted in bad faith and with willful or reckless disregard for appellee's rights under the insurance agreement. The district court's denial of appellant's JNOV motion as to punitive damages must be affirmed.[2]

### B

Even viewing the evidence in the light most favorable to appellees, however,

---

2. State Farm argues that, because the district court denied Barton's motion for a directed verdict, there must have been a reasonable basis for denying his claim and, hence, there could not have been bad faith. When ruling on Bar-

ton's motion for a directed verdict, however, the district court properly viewed the evidence in the light most favorable to State Farm. Once the jury found for Barton, the court had to view the evidence in the light most favorable to him.

there was insufficient evidence for the jury to award appellee $119,700.00 in consequential damages. "Neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation." *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438, 444 (1971) (citing *Piggy Park Enterprises, Inc. v. Schofield*, 251 S.C. 385, 162 S.E.2d 705 (1968)). Appellee points to the testimony of five witnesses to support his claim for non-economic consequential damages. All of this evidence relates to emotional distress. None of it establishes that his non-economic consequential damages were proximately caused by the insurance company's failure to pay rather than by the fact that the Bartons' home was destroyed by fire.

A State Farm employee testified that families that lose their homes "generally have great emotional and mental distress." J.A. at 14. This testimony does not establish that families who are victimized by bad faith refusal to pay an insurance claim generally suffer emotional and mental distress. A neighbor, Joyce Ballington, testified that the Bartons were "very upset" the day after the fire, and that later they were "very upset about the whole situation." *Id.* at 148. State Farm cannot be liable for emotional distress the day after the fire, which was several months before it denied the Bartons' claim. Nor could the jury find proximate cause in the statement that the Bartons were upset about "the whole situation." The evidence demonstrates that they were devastated by the *fire.* Additional evidence would be required to show that additional emotional distress, distinct and apart from that caused by the loss of their house, was caused by appellant's bad faith denial of their claim. Similarly, the testimony of another neighbor that the Bartons appeared "like a couple who lost a child or something, devastated," *id.* at 151, and the testimony of Jackie and Douglas Barton's mothers as to the Bartons' physical and mental conditions, *see id.* at 190, 195, in no way indicated that the Bartons' emotional distress was caused by the insurance company's behavior rather than by the loss of their home.

Appellee refers to two sources of economic consequential damages. First, he claims that he and his wife had to rent another house after the fire. *See id.* at 151. The Bartons would have had to rent a house even if State Farm had paid them the policy amount the day after the fire. This injury was attributable only to the fire, not to State Farm. Furthermore, appellee cites no evidence as to the amount the Bartons paid in rent. Second, appellee claims that he had to retain an attorney and pay certain costs to defend this suit. *See id.* at 319–320. He points to no evidence, however, as to the amount of his legal expenses. Thus, the jury had no reasonable basis for determining the amount of appellee's economic consequential damages or for concluding that appellee's non-economic consequential damages were proximately caused by appellant's conduct. The jury verdict awarding consequential damages was speculative, and the district court erred in denying appellant's motion for a JNOV with respect to the award of consequential damages.

### C

■ State Farm paid appellee's mortgagees $43,879.71 after the house was destroyed by the fire, thereby extinguishing any remaining debt owed by appellee to those mortgagees. The district court granted State Farm's motion for an offset against the judgment in that amount. State Farm has not foreclosed on the property; appellee remains the legal and equitable owner. In such a situation, the insurer is entitled to recover the amount paid to the mortgagees. *See Selby v. Union Automobile Indemnity Ass'n.*, 164 Ill. App.3d 34, 115 Ill.Dec. 276, 277, 517 N.E.2d 687, 688 (1987).

### III

The district court properly denied appellant's JNOV and new trial motions with respect to the jury's verdict of actual damages in the amount of the policy coverage and punitive damages. The district court also properly granted appellant's motion

for an offset in the amount paid to appellee's mortgagees in partial satisfaction of its obligations under the insurance contract. The district court erred, however, when it denied appellant's JNOV motion with respect to the jury's award of consequential damages. Appellee presented no evidence upon which the jury could base an award of economic or non-economic consequential damages. Accordingly, on remand, the district court should enter judgment in the amount of the policy coverage ($80,300.00) plus punitive damages ($35,000.00) less the offset for payment to the mortgagees ($43,879.71). The judgment of the district court is

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.