990 F.2d 1063
 25 Fed.R.Serv.3d 911
 SILMAN CUSTOM PAINTING, INC.; Delbert L. Silman; and Vera
Silman, his wife, Appellees,
v.
AETNA LIFE & CASUALTY CO., Appellant.
SILMAN CUSTOM PAINTING, INC.; Delbert L. Silman; and Vera
Silman, his wife, Appellants,
v.
AETNA LIFE & CASUALTY CO., Appellee.
 Nos. 92-1868, 92-2107.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1992.
Decided April 13, 1993.
Rehearing En Banc Denied
June 10, 1993.
 Order Denying Rehearing June 10, 1993.
 
 Kenneth L. Dement, Sikeston, MO, argued, for appellant.
 William E. Reeves, Caruthersville, MO, argued (James E. Reeves, Caruthersville, MO and Charles S. Williams, Kennett, MO, on the brief), for appellees.
 Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 A fire destroyed Delbert and Vera Silmans' (the Silmans) painting business in Portageville, Missouri. Their fire insurance carrier, Aetna Life & Casualty Co. (Aetna) denied coverage, claiming the Silmans had intentionally set the fire. The Silmans brought suit against Aetna for coverage, libel and wrongful cancellation and interference with business relationships. Aetna denied liability and counterclaimed, seeking protection of its claim for reimbursement of monies it paid to the Silmans' mortgagee, Mercantile Bank of Sikeston (the Mercantile Bank), as a loss payee. A jury found in favor of the Silmans on their insurance coverage claims and against them on their claim for libel. The district court entered judgment for the Silmans on their coverage claims, as well as on Aetna's counterclaim. The Silmans and Aetna both appeal. We affirm in part and reverse in part.
 
 I.
 
 2
 The Silmans operated an industrial spray painting business in Portageville, Missouri.[1] As part of their operation, they owned an aluminum-covered wood frame warehouse, various shop equipment and a 1985 Chevrolet three-quarter ton pickup truck.
 
 
 3
 The Silmans insured their business through Aetna. Purchasing the policies from Ziegenhorn Insurance Agency (Ziegenhorn), the Silmans insured the warehouse and its contents for $78,800 (with a $500 deductible) and the truck for $7,500. Because the premiums were due one year in advance, the Silmans, through Ziegenhorn, which was thereafter sold to Mid-South Insurance Agency (Mid-South), obtained financing from the Mercantile Bank. In this arrangement, apparently Ziegenhorn (and then Mid-South) was responsible for payment of the loan in the event the Silmans failed to pay.
 
 
 4
 On December 23, 1988, Mid-South sent a letter to Aetna, requesting that it cancel the Silmans' policies because the Silmans were delinquent in their payments to the Mercantile Bank. Aetna then sent a notice of cancellation to the Silmans, stating that their policies would expire on January 21, 1989. Apparently, Aetna also sent copies of the cancellation notice to several of the Silmans' customers.
 
 
 5
 On January 17, 1989, two fires destroyed the Silmans' warehouse and everything in it, including the 1985 pickup truck. The first fire began at approximately 3:25 p.m. and was extinguished by 4:45 p.m. The second one began at approximately 6:20 p.m. and was put out by 9:00 p.m. The Silmans reported the fires to Mid-South, which reported them to Aetna. Aetna's field adjuster and fire investigator investigated the fire, concluding that the Silmans had intentionally destroyed the property. Aetna subsequently denied the Silmans' claim.
 
 
 6
 The Mercantile Bank also financed the Silmans' business, holding two notes in the amounts of $33,000 and $18,000. Each note is secured by both the warehouse and the Silmans' residence. After denying the Silmans' claim and because the notes were cross-collateralized, Aetna invoked the mortgage clause in the policies and paid the Mercantile Bank, as the Silmans' mortgagee, $44,708.27,[2] reflecting the whole principal plus accrued interest owing on both notes, in return for an assignment of the notes and deeds of trust. Aetna still holds these instruments.
 
 
 7
 On May 12, 1989, Aetna wrote to the Mercantile Bank, stating it refused to pay the Silmans' truck loss claim because it believed they had intentionally destroyed the truck.
 
 
 8
 The Silmans brought suit against Aetna, seeking $78,300 for the face value of their warehouse property insurance, $7,500 for the truck insurance, damages for libel based on Aetna's letter to the Mercantile Bank, and wrongful cancellation of the policies and interference with the Silmans' business relationships.
 
 
 9
 Aetna answered, denying coverage and alleging that the Silmans had destroyed the insured property with the intent to defraud Aetna. Aetna also counterclaimed, seeking an order: (1) declaring it is entitled to a full assignment of the Silmans' notes and deeds of trust, and (2) requiring the Silmans to pay these notes and deeds of trust to Aetna, together with Aetna's costs and attorneys fees.
 
 
 10
 The case was tried to a jury on September 23, 1991.[3] On September 25, 1991, the district court conducted an instruction conference, at which the parties entered into an agreement, set forth in the following colloquy:
 
 
 11
 THE COURT: There is one other thing we would like to put on the record, and that is that an additional stipulation by the parties, there is a counterclaim asserted here, and rather than have that submitted to the jury, it's my understanding that the parties have agreed that if the defendant obtains a verdict as to Count I and II that the Court will have the authority to enter a judgment for the amount prayed in the counterclaim.
 
 
 12
 MR. REEVES [Appellees' Counsel]: That's correct, Your Honor. We agree.
 
 
 13
 MR. DEMENT [Aetna's Counsel]: That's our agreement, Your Honor.
 
 
 14
 MR. VANDIVORT [Appellees' Counsel]: Judge, I think it's only on Count I.
 
 
 15
 MR. REEVES: Okay. Count I.
 
 
 16
 THE COURT: It may be on Count I only. I think you're correct.
 
 
 17
 MR. REEVES: Yes.
 
 
 18
 THE COURT: Are there any further objections as to my failure to include in the charge instructions which have been tendered?
 
 
 19
 MR. REEVES: No, Your Honor.
 
 
 20
 MR. DEMENT: No, Your Honor.
 
 
 21
 III Trial Tr. at 541-42.
 
 
 22
 At the conference, the district court also granted Aetna's motion for directed verdict on the Silmans' wrongful cancellation and business interference claim.
 
 
 23
 The jury found in favor of the Silmans on their warehouse and truck coverage claims, and in favor of Aetna on the libel claim.
 
 
 24
 On October 7, 1991, Aetna filed a motion requesting the district court to offset the Silmans' verdict on their property coverage claim by the $44,708.27 it paid to the Mercantile Bank. On October 22, 1991, the district court denied the motion and entered judgment in favor of the Silmans on their two coverage claims in the amount of $100,189.24.
 
 
 25
 On November 1, 1991, Aetna filed three motions: Motion for New Trial, Motion for Judgment Notwithstanding the Verdict, and Motion to Alter or Amend the Court's Judgment on the Jury Verdict. In the latter motion, Aetna sought a credit for the $44,708.27 it paid to the Silmans' mortgagee or, alternatively, a declaration that it is "entitled ... to hold the Notes and Deeds of Trust it purchased from the Mortgagee and to ... enforce the Notes and Deeds of Trust as a Mortgagee." Addendum to brief of appellant, at 52. The district court denied these motions on March 19, 1992.
 
 
 26
 Aetna files this timely appeal, contending the district court erred in: (1) refusing to give Aetna a credit for the $44,708.27 it paid to the Mercantile Bank, and (2) allowing the Silmans to use an expert witness they failed to identify in response to Aetna's Rule 26(b)(4) interrogatories.[4]
 
 II.
 
 27
 Aetna first argues it is entitled to either a credit or set-off for the $44,708.27 it paid to the Mercantile Bank. Directing us to the Fourth Circuit's decision in State Farm Fire and Casualty Co. v. Barton, 897 F.2d 729, 733 (4th Cir.1990) and the Fifth Circuit's ruling in Farace v. Independent Fire Insurance Co., 699 F.2d 204, 211-12 (5th Cir.1983), Aetna maintains that when an insurance company pays off its insured's mortgage while challenging the insured's right to coverage under the policy, the insurer is entitled to a credit if the insured ultimately recovers. Aetna asks that we direct the district court to reduce the judgment on the property coverage claim to $29,291.92, reflecting the jury's award of $74,000.00 minus a credit of $44,708.27.
 
 
 28
 The Silmans argue that under Missouri law, Aetna's decision to pay off the mortgages and take the assignments and notes simply puts Aetna in the shoes of any other party who purchases a debt and then seeks to enforce payment by securing a judgment. The Silmans assert Aetna sought enforcement of the notes through its counterclaim, which it later agreed not to submit as part of a tactical decision to avoid presenting to a jury that Aetna could foreclose on the Silmans' home. They maintain that once the jury found in favor of the Silmans on their property coverage claim, under the stipulation, the trial court properly entered judgment against Aetna on its counterclaim.
 
 
 29
 The mortgage clause of the insurance policy under which Aetna paid off the Silmans' mortgages provides:
 
 
 30
 e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
 
 
 31
 (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
 
 
 32
 (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired. At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.
 
 
 33
 The parties' Building and Personal Property Coverage Form, § F(2)(e), at 9; App. at 81. The Silmans do not challenge the import or effect of this clause, and we note such provisions have long been held valid and enforceable by courts in Missouri. Crewse v. Shelter Mut. Ins. Co., 706 S.W.2d 35, 43 (Mo.Ct.App.1985) (citing Mosby v. Aetna Ins. Co., 285 Mo. 242, 225 S.W. 715 (1920); Kilpatrick v. Hartford Fire Ins. Co., 701 S.W.2d 755 (Mo.Ct.App.1985)).
 
 
 34
 We turn next to Missouri law interpreting insurer's rights to offsets or credits under these clauses. In Crewse v. Shelter Mutual Insurance Co., 706 S.W.2d 35 (Mo.Ct.App.1985), a fire insurer elected to deny coverage and pay off its insured's loss mortgagee pursuant to a mortgage clause. In deciding whether the district court erred in giving an instruction that failed to credit the insurer with the amount it had paid to the loss mortgagee, the court stated the insurer's payment could be viewed in one of two ways. Id. at 42. The payment could be viewed as a partial payment of the policy claim, in which case the insurer would be entitled to a jury instruction factoring in the amount the insurer had paid to the mortgagee. Id. On the other hand, the payment could "be viewed as a purchase of the right to sue on the note," which has the effect of substituting the insurer for the bank as the mortgagor's creditor. Id. at 42-43. The court reasoned the insurer was a purchaser of the note because at the time the insurer exercised its option under the policy, the mortgagors were current with their payments to the bank, and there was no evidence indicating the mortgagors went into arrears any time after the insurer purchased the notes. Id. at 43.
 
 
 35
 The court reached a somewhat different result in Kilpatrick v. Hartford Fire Insurance Co., 701 S.W.2d 755 (Mo.Ct.App.1985), finding a fire insurer's denial of coverage and subsequent purchase of its insured's notes on the loss property did not constitute payment of the fire insurance claim. Reasoning the insurer "stood in the same position as any party who had purchased the notes and then sought to enforce payment," the court ruled the district court properly directed the verdict in favor of the insurer on its counterclaim for payment of the notes where the amount of the notes was not in dispute. Id. at 757-58.
 
 
 36
 And in McPheeters v. Community Federal Savings and Loan Association, 736 S.W.2d 62 (Mo.Ct.App.1987), the court ruled that an insurer's right to pay off its insured's mortgagee under a mortgage clause and then seek to collect on the note is not a right that must be asserted as a compulsory counterclaim in the defense of an earlier action initiated by the insured under the policy. Id. at 64.
 
 
 37
 We read these cases to mean that an insurer which elects under a mortgage clause to deny coverage, pay off its insured's loss mortgagee, and then counterclaim for the amount it paid to the mortgagee is entitled to a credit or offset toward a judgment entered against it if the insurer's payment constitutes a partial payment of the underlying policy claim. Crewse, 706 S.W.2d at 42-43. If the insurer's payment is not deemed a payment on a policy claim, the insurer is a purchaser of the note and mortgage, and as a subrogee is entitled to enforce the note by way of a noncompulsory counterclaim to its insured's coverage suit. Id.; Kilpatrick, 701 S.W.2d at 757-58. To the extent the amount of the counterclaim is undisputed, the insurer is entitled to a directed verdict and judgment on its counterclaim. McPheeters, 736 S.W.2d at 64.
 
 
 38
 In our view, Aetna did not pay off the Silmans' mortgages with the Mercantile Bank as a payment--partial or otherwise--on the Silmans' fire loss claim. Aetna's actions clearly demonstrate to the contrary. In no uncertain terms, Aetna denied coverage, claiming the fire was a result of arson on the Silmans' part, and then invoked the mortgage clause, paying off the Silmans' mortgage debt and seeking, by way of its counterclaim, a declaration of the validity of its notes and mortgage and an order for payment. The district court properly denied Aetna a set-off for the monies it paid the Mercantile Bank.
 
 
 39
 However, Aetna's assertion of an offset, in our view, brings before us the correctness of the district court's order entering judgment in favor of the Silmans on Aetna's counterclaim. We believe Aetna is entitled to have its rights preserved to collect on the notes and mortgages.
 
 
 40
 In this case, the parties' stipulation relates only to Aetna's rights to a judgment on the counterclaim if Aetna succeeded in proving its defense of arson. The stipulation omitted any resolution of the counterclaim in the event the Silmans prevailed on their coverage claims.
 
 
 41
 As we read the counterclaim, Aetna asserted rights to collect on the notes and mortgage regardless of the result of the coverage issue. The counterclaim asserted in part:
 
 
 42
 That defendant's payment to Mercantile Bank has damaged defendant in the amount of $44,708.27, and entitles defendant to a full assignment and transfer of the aforesaid notes and deeds of trust and obligates plaintiffs, Delbert and Vera Silman to pay the mortgage debt to defendant.
 
 
 43
 WHEREFORE, defendant prays for an order adjudging defendant to be entitled to a full assignment of plaintiff's notes and deeds of trust, for plaintiff to be ordered to pay said notes and deeds of trust to defendant, together with defendant's costs and attorneys fees herein expended.
 
 
 44
 App. at 18.
 
 
 45
 Nothing in the pleadings suggests Aetna abandoned its rights to collect as a subrogee from the Mercantile Bank on its notes and mortgage. We note that in their reply to Aetna's counterclaim, the Silmans allege that to the extent Aetna paid Mercantile Bank, Aetna did so as a volunteer, and is otherwise not entitled to an offset. As we discussed above, the Silmans are correct--Aetna is not entitled to an offset. They are, however, incorrect in characterizing Aetna as a volunteer because, under the terms of the policy, Aetna was obligated to pay the loss payee irrespective of whether arson was the cause of the fire.
 
 
 46
 Accordingly, the district court erred in entering judgment on Aetna's counterclaim in favor of the Silmans. We direct the district court to enter a declaratory judgment that Aetna is a valid assignee of the notes and deeds of trust and entitled to stand in the shoes of the Mercantile Bank and act as a mortgagee.
 
 III.
 
 47
 Aetna next argues the district court erred in allowing Portageville Fire Chief Bob Duggins to give expert testimony because the Silmans failed to identify him as an expert in response to Aetna's interrogatories. Aetna urges us to find that the district court's admission of Duggins' testimony was an abuse of discretion and prejudicial error, which warrants a new trial on both coverage claims. The Silmans argue Duggins' testimony was admissible as lay opinion testimony under Fed.R.Evid. 701 and that Aetna suffered no improper prejudice from this testimony.
 
 
 48
 Two years before the case went to trial, Aetna sent the Silmans a Rule 26(b)(4)[5] interrogatory requesting the name and identity of expert witnesses whom they expected to call at trial. The Silmans responded with: "No decision has been made as to whom will be called as an expert witness." App. at 22. The answer to the interrogatory was never supplemented.
 
 
 49
 In their case-in-chief, the Silmans called Duggins to testify. Duggins testified he has been a fireman with the Portageville Fire Department for forty years, the last twelve years as the Department's Fire Chief. He stated he has fought several thousand fires over the course of his career and participated in arson investigations conducted by the State Fire Marshall.
 
 
 50
 Duggins further testified he arrived at the fire that destroyed the Silmans' warehouse approximately twenty minutes after it started. When counsel for the Silmans asked: "[I]s there anything unusual about a fire reigniting itself later?",[6] I Trial Tr. at 105, Aetna objected, arguing the questioning was entering the realm of expert testimony. After hearing arguments, the district court permitted the testimony, reasoning that Rule 26(b)(4)(B) did not apply to Duggins because Aetna had taken statements from Duggins, Duggins was on the parties' witness lists, and both parties otherwise had equal access to his testimony.
 
 
 51
 Using photographs taken of the property after the fire, Duggins testified that, in his opinion, and in contrast to Aetna's expert, there were no patterns on the warehouse floor indicating a flammable liquid had been used, nor was there any other evidence indicating the fire was a result of arson.
 
 
 52
 Duggins' testimony concerning whether there were patterns on the warehouse floor that would have indicated a flammable liquid had been used, and whether, ultimately, the fire was a result of arson was clearly expert opinion testimony. We reject the Silmans' contention that Duggins' testimony is, in any way or form, lay opinion testimony.
 
 
 53
 Our question is whether the district court abused its discretion in admitting the testimony over Aetna's Rule 26(b)(4) objections. In our opinion, it did not.
 
 
 54
 Duggins was clearly qualified to give expert testimony. He had vast experience as a firefighter, fire chief and arson investigator, and he was at both fires. His testimony was certainly relevant, as it went to the central issue in the case: Was the fire caused by arson? Most importantly, though, Aetna had, or should have had, notice of what Duggins would say if called to testify, as it had taken statements from Duggins, and his name had appeared on the witness lists. Aetna cannot now claim it was unfairly prejudiced by the admission of his testimony. If Aetna did not know what Duggins was going to say, it was not because of any unfair surprise attributable to the Silmans, but Aetna's own failure to ascertain Duggins' opinion about the fire during its investigation.
 
 
 55
 The trial court's ruling draws additional support from commentary to the 1970 Amendment of Fed.R.Civ.P. 26(b)(4), which states, in relevant part:
 
 
 56
 It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.
 
 
 57
 Fed.R.Civ.P. 26(b)(4) advisory committee's note (1970 Amendment).[7]
 
 
 58
 Accordingly, we rule the district court did not abuse its discretion in allowing Chief Duggins to testify. See Chohlis v. Cessna Aircraft Co., 760 F.2d 901, 906-07 (8th Cir.1985).
 
 
 59
 AFFIRMED IN PART, AND REVERSED IN PART.
 
 ORDER DENYING REHEARING
 
 60
 June 10, 1993.
 
 
 61
 Silman Custom Painting, Inc., Delbert L. Silman and Vera Silman, his wife, (Silmans) as appellees have asked for a rehearing and suggestion for rehearing en banc on grounds that the panel lacked the authority to declare as error the district court's judgment on the counterclaim. The Silmans assert this issue was not presented on appeal and that the court decided this issue sua sponte.
 
 
 62
 The petition specifically attacks this court's ruling that "the district court erred in entering judgment on Aetna's counterclaim in favor of the Silmans," as well as our direction to "the district court to enter a declaratory judgment that Aetna is a valid assignee of the notes and deeds of trust and entitled to stand in the shoes of the Mercantile Bank and act as a mortgagee." At 1068.
 
 
 63
 We reject Silmans' contention. 28 U.S.C. § 2106 (1988) provides:
 
 
 64
 The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
 
 
 65
 In its appeal, Aetna contended the disrict court erred in refusing to give Aetna credit for the $44,708.27 it had paid to Mercantile Bank in exchange for an assignment of the mortgages (deeds of trust).
 
 
 66
 In determining this issue, the court turned to an examination of Missouri law relating to the rights of a fire insurer who pays the insured's mortgagee as a loss payee after a fire loss. This examination led this court to conclude that, although Aetna was not entitled to an offset, it was entitled to a lesser form of relief, i.e. protection of its rights to collect on the underlying notes and mortgages.
 
 
 67
 In the court's view, Aetna's claim of error justified only partial relief and, as the court stated:
 
 
 68
 [B]rings before us the correctness of the district court's order entering judgment in favor of the Silmans on Aetna's counterclaim. We believe Aetna is entitled to have its rights preserved to collect on the notes and mortgages.
 
 
 69
 At 1068.
 
 
 70
 Moreover, the court recollects that the issue of Aetna's rights arose at oral argument and Silmans' counsel stated, in effect, that Aetna's remedy was not by offset but foreclosure of the mortgages that had been assigned to Aetna.
 
 
 71
 As Aetna observes in its response to this petition for rehearing:
 
 
 72
 In this appeal, the issue to be resolved was how the payment of the Silmans' mortgage by Aetna should be treated by the District Court. Should Aetna have received a credit for the amount it paid for the Silmans' mortgage or should it be able to stand in the shoes of the Bank and act as mortgagee? This Court decided that Aetna was not entitled to a credit, but was entitled to act as mortgagee. (Citation omitted)
 
 
 73
 ....
 
 
 74
 Rather than creating "a boundless exception to the limits of Appellate Court jurisdiction" as the Silmans allege in the Petition for Re-Hearing, this Court performed its correct function of resolving how the payment made by Aetna to the Silmans' mortgagee should be treated by the District Court.
 
 
 75
 Response to Petition for Rehearing at 4-5.
 
 
 76
 The petition for rehearing is denied.
 
 
 
 [1]
 The Silmans are the sole shareholders and officers of Silman Custom Painting Incorporated
 
 
 [2]
 There is a relatively insignificant discrepancy in the amount Aetna asserts it paid the Mercantile Bank. In its counterclaim, Aetna asserts it paid $44,708.27. App. at 18. In its Motion for Credit on Judgment, Aetna states it paid $44,708.08. App. at 35. In its brief on appeal, Aetna offers up a variety of figures, including $44,708.00 (p. i), $44,708.08 (pp. i, 12, 13), $44,708.27 (p. iii), and $44,408.08 (pp. 5, 6). For purposes of our discussion, we use $44,708.27, which is the amount Aetna sought in its counterclaim
 
 
 [3]
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri, presiding
 
 
 [4]
 The Silmans cross-appeal, arguing the district court erred in sustaining Aetna's motion for directed verdict on their claim for wrongful cancellation and tortious interference. The Silmans claim the policy was prepaid and when Aetna sent the cancellation notices to their customers, they lost over $200,000 in contract jobs because they were unable to provide proof of insurance. In our opinion, Aetna was entitled to cancel the policies and the district court properly directed verdict against the Silmans
 
 
 [5]
 Federal Rule of Civil Procedure 26(b)(4) provides in relevant part:
 (4) Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
 (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
 
 
 [6]
 Aetna asserted at trial that the second fire, like the first, had been intentionally lighted. Duggins testified that, in his opinion, neither was the result of arson
 
 
 [7]
 We do not decide whether the Silmans were obligated to disclose the name of Chief Duggins as a fact witness, as the issue was neither briefed nor argued. We address only the abuse of discretion argument made here by appellant