**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT


**No. 20-1265**


COLUMBIA INSURANCE COMPANY,

Plaintiff – Appellee,

v.

CHRISTOPHER KAMIL WAYMER, individually and d/b/a QE Trucking,

Defendant – Appellant,

and

WILLIAM EDMUND REYNOLDS, JR.; ANGELA D. REYNOLDS,

Defendants.


**No. 20-1266**


COLUMBIA INSURANCE COMPANY,

Plaintiff – Appellee,

v.

WILLIAM EDMUND REYNOLDS, JR.; ANGELA D. REYNOLDS,

Defendants – Appellants,

and

CHRISTOPHER KAMIL WAYMER, individually and d/b/a QE Trucking,

Defendant.

---

**No. 20-1267**

---

CHRISTOPHER KAMIL WAYMER, individually and d/b/a QE Trucing,

Plaintiff – Appellant,

v.

COLUMBIA INSURANCE COMPANY,

Defendant – Appellee,

and

JAMES C GREENE COMPANY; O W RAY,

Defendants.

---

Appeals from the United States District Court for the District of South Carolina, at Charleston. Richard M. Gergel, District Judge. (2:18-cv-02975-RMG; 2:19-cv-00260-RMG)

---

Argued: March 11, 2021

Decided: June 22, 2021

---

Before KING, WYNN, and HARRIS, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Kathleen Chewning Barnes, BARNES LAW FIRM, LLC, Hampton, South Carolina; Bert Glenn Utsey, III, CLAWSON FARGNOLI UTSEY, LLC, Charleston, South Carolina, for Appellants. Charles Mitchell Brown, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellee. **ON BRIEF:** Mark B. Tinsley, GOODING & GOODING, PA, Allendale, South Carolina, for Appellants Angela Reynolds and William Edmund Reynolds, Jr. A. Mattison Bogan, Brian P. Crotty, Blake

T. Williams, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In these consolidated appeals, we consider an insurance dispute arising out of the handling of two related personal injury claims. The claimants, William and Angela Reynolds, were seriously injured in a car accident involving a driver insured by Columbia Insurance Company (CIC). In the months that followed, the Reynoldses' attorney made two time-limited settlement demands on CIC. CIC rebuffed both, explaining that the first imposed an unreasonable deadline and the second included terms to which it could not agree. CIC separately offered – and has since paid – the full $1 million limits on its driver's insurance policy.

At issue is whether CIC engaged in bad faith insurance practices under South Carolina law when it rejected the Reynoldses' settlement demands, rendering it liable for the full amount of damages arising from the accident. The district court granted summary judgment to CIC, holding that no reasonable jury could find that CIC violated its state-law duty to act in good faith toward its insured. For the reasons given by the district court in its well-reasoned opinion, we now affirm.

**I.**

**A.**

On December 16, 2013, William and Angela Reynolds suffered severe injuries when the car they were driving hit Christopher Waymer's logging truck. An investigating officer later determined that Waymer had failed to yield the right of way and so was at fault.

4

Two weeks later, the Reynoldses, still in the hospital, hired attorney Mark Tinsley to represent them in their personal injury claims against Waymer. Tinsley quickly began his investigation, requesting hospital records from the Medical University of South Carolina (MUSC) to substantiate the Reynoldses' injuries. In part because MUSC does not release records until after patient discharge, Tinsley did not receive a first, still-incomplete set of records for Mr. Reynolds until January 27, 2014, and for Mrs. Reynolds until February 5, 2014.

In the meantime, Tinsley began to discuss his clients' claims with representatives from Columbia Insurance Company (CIC), which insured Waymer's truck with a $1 million liability policy. On January 9, 2014, Tinsley spoke with CIC's outside insurance adjuster, informing him of the severity of his clients' injuries and indicating that he would demand the full $1 million policy limits. CIC then assigned an internal claims administrator to the file and retained an attorney, Jay Saleeby, to represent Waymer. On January 20, 2014, CIC raised the amount it had set aside for a potential payment to the Reynoldses – the "reserves" on their claims – to the policy limits of $1 million.

On January 23, 2014, Tinsley made the first of the settlement demands at issue: a ten-day offer to settle the Reynoldses' claim for the $1 million policy limits (the "January Settlement Demand"). At that time, as noted above, Tinsley had yet to begin receiving partial hospital records for either of the Reynoldses. And Tinsley's demand letter, while describing the extent of his clients' injuries, provided no substantiating medical records or bills. Instead, it simply asserted that "[t]he value of these claims clearly exceeds the

5

available insurance coverage," and gave CIC a ten-day deadline for response, after which the offer would be "irrevocably withdrawn." J.A. 393.

On January 31, 2014 – roughly halfway through the response period – Saleeby, the lawyer CIC had hired for Waymer, contacted Tinsley and explained that CIC was "in the process of gathering information so that there can be a reasonable opportunity to evaluate [his] clients' claims." J.A. 399. At that point, CIC had only Tinsley's own reports and two air-ambulance bills, which noted over $60,000 in costs and offered initial impressions of the Reynoldses' injuries. At Saleeby's request, Tinsley sent him signed authorizations so that Saleeby could seek hospital records on his own. But Tinsley cautioned that the authorizations were not intended to "waive or extend" the ten-day deadline, nor give CIC a chance to "merely validate what [Tinsley already had] told the insurance company about the injuries." J.A. 404. Again, at that point Tinsley himself was still in the process of collecting a first round of partial medical records for the Reynoldses. The deadline in the January Settlement Demand expired without action by CIC.

At the beginning of April 2014, Tinsley's office forwarded to CIC the Reynoldses' full hospital records and bills. Those records substantiated medical costs to date of $407,595.15 for Mr. Reynolds, and $273,638.84 for Mrs. Reynolds. Three weeks later, CIC offered to pay the full $1 million policy limits.

In mid-May, the Reynoldses – through Tinsley – rejected CIC's policy-limits offer and responded with a second demand of their own (the "May Settlement Demand"). In this second demand, Tinsley alleged that CIC had violated its state-law duty of good faith and fair dealing toward its insured, Waymer, when it declined to settle the claims against

6

him in January. As a result, Tinsley believed CIC now could be liable to Waymer – and, by extension, the Reynoldses – under South Carolina's *Tyger River* doctrine for *all* damages the Reynoldses might recover in a tort suit against him, notwithstanding the limits of his policy with CIC. *See Tyger River Pine Co. v. Md. Cas. Co.*, 170 S.E. 346, 348 (S.C. 1933).

Tinsley then offered CIC a "final chance" to settle the case – this time, with a fifteen-day deadline – and proposed two options. Under the first, the parties would skip over any trial on liability or damages, litigating only whether CIC acted in bad faith when it rejected the January Settlement Demand. If the jury found bad faith, CIC would pay the Reynoldses $3.5 million, a figure intended to capture the likely extent of their damages; if the jury found no bad faith, then CIC would pay the $1 million policy limits. Under the second option, the parties would litigate the extent of the Reynoldses' injuries as well as the existence of bad faith on CIC's part. If the jury found CIC liable in bad faith, then CIC would pay whatever the jury found the Reynoldses' damages to be – without any right to appeal that verdict as excessive. If the jury found CIC had not acted in bad faith, then CIC again would owe the $1 million policy limits. Under either option, CIC would have to waive certain defenses regarding the real party in interest and the applicability of any release given by the Reynoldses. CIC rejected both proposals but reiterated its offer to pay the policy limits.

With no settlement in sight, the Reynoldses litigated their accident claims against Waymer in state court. After Waymer conceded liability, a special referee awarded $3.5

7

million to Mrs. Reynolds and $3 million to Mr. Reynolds.  CIC then paid the Reynoldses the $1 million in Waymer's policy.

**B.**

In this appeal, we consider two consolidated cases that present the same underlying question:  Did CIC violate its state-law duty to act in good faith toward its insured, Waymer, when it rejected the Reynoldses' settlement demands in either January or May of 2014?

The litigation began with an action filed by CIC in federal district court.  CIC sought a declaratory judgment that its failure to accept the January Settlement Demand did not constitute bad faith under South Carolina law, given the short deadline Tinsley had imposed, his failure to document the Reynoldses' injuries, and CIC's inability to acquire supporting records so soon after the accident.  Waymer and the Reynoldses opposed that request and asked the court for a different declaration:  that CIC *had* acted in bad faith, first when it rejected the January Settlement Demand and again when it rejected the May Settlement Demand.  Meanwhile, Waymer brought a separate tort claim against CIC in state court, alleging its bad faith refusal to settle.  CIC removed that case to federal court, where the cases were consolidated, and then moved for summary judgment on all claims.

The district court granted CIC's motions and entered summary judgment in its favor. *See Columbia Ins. Co. v. Reynolds*, 438 F. Supp. 3d 614, 617 (D.S.C. 2020).  The court began its thoroughly reasoned opinion by describing South Carolina's "cause of action for bad faith refusal to settle." *Id.* at 620.  As the court explained, South Carolina law imposes on insurers a duty to their insured "to settle a personal injury claim covered by the policy,

8

if settlement is a reasonable thing to do." *Id.* (quoting *Trotter v. State Farm Mut. Auto. Ins. Co.*, 377 S.E.2d 343, 349 (S.C. App. 1988)). And if an insurer unreasonably refuses to settle a covered claim within the policy limits, then it will be liable for the entire amount of the judgment obtained against the insured, even if that amount exceeds the policy limits. *See Doe v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 557 S.E.2d 670, 674 (S.C. 2001) (citation omitted).

As the district court recognized, this doctrine provides substantial protection to the insured. Indeed, under South Carolina's *Tyger River* doctrine, an insurance company must "sacrifice its interests in favor of" those of the insured when a conflict of interest as to settlement arises. *Reynolds*, 438 F. Supp. 3d at 620 (quoting *Tyger River*, 170 S.E. at 348). But the critical issue remains "'whether there was a reasonable basis' for the carrier's actions," taking into account the best interests of the insured. *Id.* (quoting *Vanderhall v. State Farm Mut. Auto. Ins. Co.*, No. 4:14-518-RMG, 2015 WL 1507838, at *4 (D.S.C. Mar. 30, 2015)); *see also Tyger River*, 170 S.E. at 349 (explaining that insurer owed duty to settle "if that was the reasonable thing to do").

Whether an insurer has unreasonably refused to settle, the court explained, turns on the totality of the circumstances and is a question for the jury, "[s]o long as there is sufficient evidence in support of a bad faith claim on which a rational factfinder could return a verdict for the insured." *Reynolds*, 438 F. Supp. 3d at 620. But here, reviewing the record in the light most favorable to the nonmoving parties – the Reynoldses and Waymer – the court concluded that no reasonable jury could find that CIC had refused to settle unreasonably and in bad faith. *Id.* at 620, 622–23.

The court began with the ten-day January Settlement Demand, which presented one key question: "[W]hether an insurance carrier, faced with a substantial policy limits demand with a short response time unilaterally imposed by the plaintiff's counsel at the outset of a case, has the right to conduct a reasonable investigation before its failure to accept the settlement demand constitutes a bad faith refusal to settle." *Id.* at 621. Drawing on cases from other jurisdictions, the court found that insurers like CIC do have such a right. *Id.* The "linchpin" of insurer liability on a bad faith claim, the court explained, is "*unreasonable* delay" in offering up its policy limits. *Id.* (quoting *Noonan v. Vt. Mut. Ins. Co.*, 761 F. Supp. 2d 1330, 1336 (M.D. Fla. 2010)). And an insurer does not delay unreasonably when, acting diligently, it conducts a reasonable investigation before acceding to a settlement demand. Any rule to the contrary, the court concluded, "would 'starv[e] the insurer of the information needed to make a fair appraisal of the case' and undermine the adversarial system." *Id.* (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 669 (10th Cir. 2007)).

Applying those principles, the district court held that no reasonable jury could find bad faith in CIC's failure to accept the January Settlement Demand within ten days, before "conduct[ing] a basic investigation" or "review[ing] . . . the relevant medical records." *Id.* at 622. It was true, the court recognized, that read most favorably to the nonmoving parties, the record showed that CIC was aware almost from the start that "this was likely a policy limits case" – as reflected, for instance, by CIC's early decision to raise the reserves on the Reynoldses' claims to the full $1 million policy limits. *Id.* at 621. But it also was the case that at the time of the January Settlement Demand, CIC had not been able to "validate[]

that impression with hard medical evidence," *id.*, given that "none of those involved, including CIC staff, outside adjusters, and counsel for the respective parties, had received the MUSC medical records and bills associated with the Reynolds[es]' hospitalization," *id.* at 620. Under those circumstances, the court concluded, no reasonable jury could fault CIC for waiting to review those documents – and then, once they were received, promptly offering the full $1 million policy limits – instead of acceding to the ten-day deadline imposed by the claimants' counsel. *Id.* at 622.

The court likewise concluded that no reasonable jury could find that CIC acted in bad faith when it refused to accept the terms of the May Settlement Demand. *Id.* at 623. As the district court noted, by the time of this second demand, CIC had received and reviewed the Reynoldses' hospital records and offered to settle for Waymer's full $1 million policy limits. *Id.* at 622. Now, it was the Reynoldses who refused, instead demanding that CIC both pay Waymer's policy limits *and* agree to litigate – on "non-traditional" terms set by the Reynoldses' counsel, including the waiver of "significant legal rights" – whether and to what extent it was liable for acting in bad faith. *Id.* at 622–23.

As a matter of law, the district court found, refusing to give in to such a demand does not constitute bad faith. To be sure, the court recognized, CIC could have *agreed* to enter into either of the settlement options presented in May. *Id.* at 623. But an insurer's "duty to act reasonably in light of the best interests of its insured . . . does not *require* capitulating to unorthodox demands of a plaintiff's counsel," such as "waiving or abandoning the carrier's important rights and defenses." *Id.* (emphasis added). The challengers' contrary approach, the court reasoned, came with no limits on what claimants

11

could force insurers to give up: Would an insurer be liable in bad faith for refusing to waive its right to trial by jury, or to concede liability for twice the policy limits? *Id.* The "potential for abuse," the court concluded, was "obvious," with plaintiffs able to leverage bad faith litigation to "break the ability of an insurance company to mount proper defenses." *Id.*

Accordingly, the district court granted summary judgment to CIC and dismissed with prejudice the actions against it. *Id.* at 624. Waymer and the Reynoldses timely appealed.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018). Under that standard, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, summary judgment was appropriate if "the record demonstrates that 'there [wa]s no genuine dispute as to any material fact,'" and that the movant was "entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). On appeal, the parties advance substantially the same arguments against summary judgment that they presented to the district court. And largely for the reasons given by the district court in its opinion, we now affirm the judgment in favor of CIC in these consolidated cases.

The district court correctly concluded that CIC was entitled to summary judgment on the bad faith claim arising out of the January Settlement Demand. As this court has

recognized, "[i]n South Carolina, an insurer cannot be liable for bad faith refusal to pay proceeds due under an insurance agreement if there exists an objectively reasonable basis for denying the . . . claim." *State Farm Fire & Cas. Co. v. Barton*, 897 F.2d 729, 731 (4th Cir. 1990); *see also Reynolds*, 438 F. Supp. 3d at 620 (citation omitted) (district court explaining that the "critical issue" under South Carolina law is whether there was a "reasonable basis" for failing to settle). South Carolina courts have not weighed in on whether a lack of time to investigate constitutes an objectively reasonable basis for refusing to accede immediately to a short-fuse demand to pay the policy limits. So in this diversity case, the district court was obligated to predict how the South Carolina Supreme Court would answer this question. *See Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (citation omitted). Here, the court appropriately relied on ample case law in other jurisdictions indicating that "an insurer, acting with diligence and due regard for its insured, is allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer . . . without time for investigation." *Reynolds*, 438 F. Supp. 3d at 621 (quoting *Johnson v. GEICO Gen. Ins. Co.*, 318 F. App'x 847, 851 (11th Cir. 2009) (applying Florida law)). Indeed, as one insurance law treatise put it, "[f]ailure to accept a demand cannot be bad faith if it expired while the insurer's investigation was sufficiently incomplete so as to prevent adequate evaluation of the . . . danger of an excess judgment." 1 New Appleman Insurance Bad Faith Litigation § 2.03[6][d][iv] (2d ed. 2020 update) (internal quotation marks omitted). We see no reason why South Carolina would break from this widespread and reasonable approach to time-limited demands, and the appellants have pointed us to no case law suggesting that it would.

13

Under this standard, we recognize that there will be close cases in which a jury must decide whether under all of the circumstances – including the time limit in a claimant's demand, the information already available to the insurer, and the additional investigation or documentation sought by the insurer – a carrier has acted reasonably in refusing a policy-limits settlement offer. But this is not such a case. Rather, we agree with the district court's careful analysis of the record, read in the light most favorable to the nonmoving parties: Though CIC certainly had indications that this serious accident would cause damages at or in excess of Waymer's policy limits, it lacked adequate information or opportunity to evaluate the risk of an excess judgment before the ten-day January Settlement Demand expired, providing it with a reasonable basis for refusing to settle.

The district court likewise properly granted summary judgment to CIC on the claim that it acted in bad faith in refusing to agree to the Reynoldses' May Settlement Demand. Again, South Carolina courts have yet to confront such "unorthodox" settlement demands, *Reynolds*, 438 F. Supp. 3d at 623, or provide direct guidance on whether an insurer acts in bad faith by refusing to settle a claim on terms that would require it to give up significant rights in future bad faith litigation. But as the parties and the district court recognized, insurance litigants in Florida have come up with similar settlement proposals that seek to channel litigation over allegations of bad faith failure to settle accident claims. *See id.* (discussing *Cunningham v. Standard Guar. Ins. Co.*, 630 So. 2d 179, 181 (Fla. 1994)). And although Florida courts have "bless[ed]" such agreements when entered into voluntarily, the district court reasoned, they also have "appropriately held that a refusal to enter into [one] did not constitute bad faith." *Id.* (citing *Berges v. Infinity Ins. Co.*, 896 So.

14

2d 665, 671 n.1 (Fla. 2004)).  Again, we see no indication that the South Carolina Supreme Court would depart from the Florida precedent most directly on point – precedent that appears to accord with South Carolina's overarching rule that insurers will not be liable for bad faith so long as there "exists an objectively reasonable basis" for refusing a settlement offer.  *See Barton*, 897 F.2d at 731.  We therefore affirm the grant of summary judgment to CIC as to the second bad faith claim.

## III.

For the reasons given above, we affirm the district court's grant of summary judgment in favor of CIC.

*AFFIRMED*